ATLANTIC & GULF STEVEDORES, INC., *v.*
ELLERMAN LINES, LTD., ET AL.

No. 282.   Argued February 20, 1962.—Decided April 2, 1962.

*Francis E. Marshall* argued the cause for petitioner. With him on the briefs was *James J. Davis, Jr.*

*Thomas E. Byrne, Jr.* argued the cause and filed briefs for respondents.

*Martin J. McHugh* argued the cause for the National Association of Stevedores, as *amicus curiae,* urging reversal. With him on the brief was *James M. Leonard.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Leighton Beard was a longshoreman employed by Atlantic and Gulf Stevedores, Inc. Atlantic, the petitioner, performed stevedoring services for respondents. Beard received injuries while helping to discharge bales of burlap from a vessel owned by respondents. These bales, loaded in India, were bound by four parallel one-inch steel bands that petitioner had not placed around the bales but were part of the cargo; and each bale, containing 30 to 40 bolts of burlap, was stowed in tiers. The discharging operation consisted of pulling the bales from their stowed positions to the hatch and then raising them vertically through the hatch and lowering them onto the pier. This was accomplished by using a ring to which six equal-length ropes were attached. A hook was on the end of each rope; and two hooks were used on each bale, three bales being raised in one operation. Beard and his co-workers would signal the winch operator to pull the bales from their stow to a position under the hatch. When the sideways movement had ended, the bales would be raised vertically. After several hours of one unloading operation, two bands of one bale broke. The bale fell, injuring Beard.

The evidence showed that Atlantic played no part in the loading or stowage of this cargo of burlap. There were sixty-three tons of bales in the forward end of the

hold destined for New York; and they extended halfway into the space under the hatch. The bales being unloaded were in the after end of the hold. ₁The bale that fell struck the New York cargo and bounded toward Beard, pinning him against the after bulkhead and causing injuries resulting in the amputation of his right leg.

Beard sued respondents in the District Court on the basis of diversity of citizenship, alleging that their vessel was unseaworthy and that they were negligent. Respondents impleaded petitioner, alleging that it was negligent in its manner and method of unloading and asking indemnity from it in case respondents were held liable to Beard. Counsel near the end of the trial agreed upon five special interrogatories, to which the jury responded as follows:

1. Was unseaworthiness a substantial factor in causing the injuries to the plaintiff?

Yes.

2. Was there negligence on the part of Ellerman Lines, Ltd., which was a substantial factor in causing injuries to the plaintiff?

Yes.

3. In what amount, if any, did you assess the damages to be awarded the plaintiff?

$100,000.

4. If you have answered yes to Interrogatories 1 or 2, did the fault of Ellerman Lines, Ltd., and the City Line, Ltd., arise out of any failure on the part of Atlantic and Gulf Stevedores, Inc., to do its work in accordance with the contractual obligation?

No.

5. If you have answered yes to Interrogatory No. 4 was Atlantic and Gulf Stevedores, Inc.'s breach of this contract a substantial factor in bringing about the injuries to the plaintiff?

No.

The District Court thereupon entered judgment in favor of Beard against respondents and in favor of petitioner on respondents' claim for indemnity.

On appeal it was argued, *inter alia,* that a finding of negligence on the part of respondents was warranted because they failed to provide a safe place to work in view of the manner in which the New York cargo was stowed. With this the Court of Appeals agreed. Negligence on the part of respondents, it said, was also established by the knowledge of their chief mate that the use of bale hooks was a dangerous way to discharge burlap bales, and from evidence that bands on the bales broke in "roughly between 3 and 5 percent of the bales" during discharging operations. The court said that though the use of bale hooks may have been customary in Philadelphia, such use was not sufficient to relieve respondents of negligence.

It went on to say that there was evidence to show that respondents, by virtue of the manner of loading, were negligent in not affording Beard a safe place to work. It held, however, that since the "warranty of workmanlike service extends to the handling of cargo . . . as well as to the use of equipment incidental to cargo handling" (*Waterman Co.* v. *Dugan & McNamara,* 364 U. S. 421, 423), petitioner was liable, as a matter of law, to respondents. For if it was negligent for respondents to permit Beard to work in an unsafe place, it was "equally negligent" for petitioner to handle the cargo in the manner it did, in light of the unsafe place where Beard worked. 289 F. 2d 201, 207.

The Court of Appeals therefore affirmed the judgment in favor of Beard and against respondents on the issue of negligence (without reaching the question of unseaworthiness), but reversed the judgment in favor of Atlantic. The case is here on a petition for certiorari. 368 U. S. 874.

We might agree with the Court of Appeals had the questions of fact been left to us. But neither we nor the

Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them. For the Seventh Amendment says that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."

The requirements of the Seventh Amendment were brought into play in this case, even though a stevedoring contract is a maritime contract.[1] Since "loading and stowing a ship's cargo" is part of the "maritime service," a stevedore can recover against his employer in admiralty for the latter's negligence (*Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 61), on the conditions provided in the Longshoremen's Act, 33 U. S. C. § 905, 44 Stat. 1426. And when the shipowner is held liable, it may in the same suit recover over against the stevedoring company on the stevedore contract in order to prevent needless multiplicity of litigation. *American Stevedores* v. *Porello,* 330 U. S. 446, 456.

Congress since 1789, in giving Federal District Courts original jurisdiction of civil cases in admiralty, has saved "to suitors in all cases all other remedies to which they are otherwise entitled." 28 U. S. C. § 1333 (1). Therefore, a suit for breach of a maritime contract, while it may be brought in admiralty, may also be pursued in an ordinary civil action,[2] since, unlike the proceeding in *The Moses*

---

[1] A stevedore's contract with a shipowner is "comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance" of the stevedoring service. *Ryan Co.* v. *Pan-Atlantic Corp.,* 350 U. S. 124, 133–134.

[2] Suits on maritime contracts may be brought in the federal courts under the head of diversity jurisdiction. *Pope & Talbot, Inc.,* v. *Hawn,* 346 U. S. 406; *Wilburn Boat Co.* v. *Fireman's Ins. Co.,* 348 U. S. 310.

*Taylor,* 4 Wall. 411, it is a suit *in personam.* "Where the suit is *in personam,* it may be brought either in admiralty or, under the saving clause, in an appropriate non-maritime court, by ordinary civil action." Gilmore and Black, The Law of Admiralty (1957), p. 36. And such suits on the law side are not restricted to enforcement of common-law rights but extend as well to maritime torts. *Seas Shipping Co.* v. *Sieracki,* 328 U. S. 85, 88–89.

This suit being in the federal courts by reason of diversity of citizenship carried with it, of course, the right to trial by jury. As in cases under the Jones Act (*Schulz* v. *Pennsylvania R. Co.,* 350 U. S. 523; *Senko* v. *LaCrosse Dredging Corp.,* 352 U. S. 370) and under the Federal Employers' Liability Act (*Tennant* v. *Peoria & P. U. R. Co.,* 321 U. S. 29; *Ellis* v. *Union Pacific R. Co.,* 329 U. S. 649, 653; *Dice* v. *Akron, C. & Y. R. Co.,* 342 U. S. 359; *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500), trial by jury is part of the remedy. Thus the provisions of the Seventh Amendment, noted above, are brought into play. *Schulz* v. *Pennsylvania R. Co., supra,* at 524. As we recently stated in another diversity case, it is the Seventh Amendment that fashions "the federal policy favoring jury decisions of disputed fact questions." *Byrd* v. *Blue Ridge Cooperative,* 356 U. S. 525, 538, 539. And see *Herron* v. *Southern Pac. Co.,* 283 U. S. 91, 94–95.

In answer to interrogatories Nos. 4 and 5 the jury found that petitioner had not failed to perform its contractual obligation to respondents. The contract provided that petitioner should do the work "with every care and due dispatch to the satisfaction" of the owners. In its charge to the jury the District Court said that the owner had a duty to provide longshoremen a safe place to work; and it left to the jury whether respondents had warning that the method of unloading was unsafe and whether the manner of loading the cargo by respondents made this an unsafe place for Beard to work. It left to

the jury respondents' contention that, if anyone was negligent in leaving the New York cargo in the place where it was and in not shifting it, it was petitioner's negligence, not theirs. It also charged the jury on petitioner's liability, should Beard be found to have established his case. It referred the jury to the contract saying petitioner was obliged "to unload and discharge this cargo of burlap with the utmost care."

The Court of Appeals held that the jury had been charged too restrictively, that their attention had been called only to the manner of using the hook. The trial judge did indeed charge:

> "You must answer the question, was that a reasonable and safe method of operation for the discharge of that cargo? Taking into consideration that it had been done over a period of years, that it was a usual and accepted method in various places, you will have to examine into the nature of the application of the hook to the bale, and you will take into consideration the testimony of both experts, and both counsel argued to you in their interpretation of the testimony the results that they feel favor their side."

But it went further and charged that if petitioner was responsible for the breaking of the bands, petitioner would be liable:

> ". . . if you . . . find that that negligent conduct was such that it broke the band, rather than any unseaworthiness of the band,[3] then you must find for the defendant shipping companies; but you have to make that finding in the light of all the circumstances, whether or not there was sufficient evidence

---

[3] The trial judge also charged that "if you find that the bands of the bale were defective, were inadequate, or insufficient . . . then you might find the defendants liable under the doctrine of unseaworthiness."

that persuades you that that conduct of the long-shoremen was responsible for the breaking of the band—not any unseaworthiness in the band itself."

It also charged that if the verdict was for Beard, the jury should determine whether petitioner created the condition that made respondents liable. It charged:

"There again you have to run the whole gamut of facts in the case. You will have to decide whether or not there was an unreasonable discharge of this cargo, an unsafe method used in the discharge of this cargo, in the placing of the hook. Did they breach that contract to do it in a workmanlike manner with the utmost care? The steamship company says, 'Yes, they did. They breached that contract. They did not do it in a workmanlike manner. All the evidence here points to the fact that they did not do it with the utmost care, and therefore they caused the condition which created the liability which is ours, which the plaintiff has secured against us as defendants.' "

The trial judge further charged:

". . . Whether or not there was a breach of that contract, what you look to decide is whether or not there was reasonably safe discharge of that cargo by the Atlantic & Gulf Stevedores. If it was not, if it was not done in a reasonably safe manner, then Atlantic & Gulf Stevedores would breach their warranty under the contract. If there was sub-standard performance on which it was foreseeable by them that some injury might happen or eventuate, then Atlantic & Gulf Stevedores would be responsible to the plaintiff shipping company."

More specifically the trial judge charged:

". . . you will have to determine whether there was negligence in the leaving of that New York part of

that cargo in the place where it was, and whether it was an interference, as the plaintiff claims, with his condition of safety.

"On the other hand, the defendant says, 'This was not our job; the shifting should have been done by the stevedores. We, the shipping company, were not negligent in failing to get it out of the way.'

"The plaintiff asserts here and asks you to believe and to weigh in the balance toward meeting the burden which he has to establish by the fair preponderance of the evidence that this officer was there but did not stop the operation. The defendant says, 'If you find, no matter what the officer says, that this was being unloaded in a reasonably safe manner then we were not liable; it may well be that the Atlantic & Gulf stevedores are liable, but we were not liable.' "

We disagree with the Court of Appeals that the trial judge limited the issue of petitioner's liability to "the use of the bale hook method in discharging the cargo." 289 F. 2d, at p. 208. When the District Court charged that in determining petitioner's contractual obligation the jury should decide "whether or not there was a reasonably safe discharge" of the cargo, it included the totality of the circumstances.

The question of the manner in which the New York cargo had been stored was prominent in the case; and the trial judge left it to the jury on the question of respondents' negligence. On the issue of petitioner's liability his charge was no more precise than has been indicated. Yet respondents did not ask for more on this phase of the controversy. In their requested charge they were no more specific, except they maintained,[4] as did the Court

---

[4] One of respondents' requested charges was:

"If, on the other hand, you find in favor of the plaintiff and against the defendant, and the basis of your finding is that the method of dis-

of Appeals, that under these circumstances the stevedore is liable under its contract as a matter of law.

We cannot say that petitioner was liable as a matter of law nor that the trial judge in the charge to the jury omitted any ingredient from petitioner's contractual liability. Moreover, we cannot say that the jury's verdict was inconsistent. The Court of Appeals said that the case of the respondents' negligence was established because

". . . the record affords ample basis for a jury fact-finding that (1) use of the bale hook method in the discharge of the burlap bales constituted negligence, and (2) that the injured longshoreman was not afforded a safe place to work." 289 F. 2d, p. 207.

So far as we know the jury may have found respondents liable not on either of those two grounds but solely on a third, namely, because of defective bands—a matter which was covered by the charge to the jury on the issue of unseaworthiness, and properly so. *Weyerhaeuser S. S. Co.* v. *Nacirema Co.*, 355 U. S. 563, 567. If that was the jury's view of the facts, then petitioner plainly would not be liable under its warranty. Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment. *Arnold* v. *Panhandle & S. F. R. Co.*, 353 U. S. 360. Cf. *Dick* v. *New York Life Ins. Co.*, 359 U. S. 437, 446.

*Reversed.*

Mr. Justice Harlan concurs in the result.

charging was not reasonably safe and proper under the circumstances existing at the time of the accident, then I charge you that under these circumstances you must further find a verdict in favor of the defendant and against Atlantic & Gulf Stevedores, Inc."

MR. JUSTICE STEWART, whom MR. JUSTICE FRANK-
FURTER joins, dissenting.

In my view the Court of Appeals correctly ruled that
the respondents were entitled to indemnity from the peti-
tioner under principles first set forth by this Court in
*Ryan Co.* v. *Pan-Atlantic Corp.*, 350 U. S. 124, and fol-
lowed in *Weyerhaeuser S. S. Co.* v. *Nacirema Co.*, 355
U. S. 563, *Crumady* v. *The J. H. Fisser*, 358 U. S. 423,
and *Waterman Co.* v. *Dugan & McNamara*, 364 U. S. 421.

Beard's action was based upon both negligence and
unseaworthiness. The respondents were alleged to have
been negligent (1) in permitting the use of the bale hook
method of discharging the bales, particularly in view of
the chief officer's statement that he thought the method
dangerous, and (2) in improperly stowing the New York
cargo and thereby failing to use ordinary care to provide
Beard with a safe place to work.* The Court of Appeals
properly determined that there was sufficient evidence on
either ground to support the jury's general finding of neg-
ligence, a determination which I do not understand to be
contested here. But a finding of negligence on either
ground would necessarily carry with it the conclusion that
the petitioner had breached its contractual obligation to
the respondents.

As we said only last Term in *Waterman Co.* v. *Dugan &
McNamara, supra,* at 423, the stevedore's "warranty of
workmanlike service extends to the handling of cargo . . .
as well as to the use of equipment incidental to cargo
handling . . . ." If the respondents were negligent in
permitting the petitioner's use of a dangerous method of
unloading cargo, the petitioner surely breached its "war-

---

*The opinion of the Court suggests that there was a third possible
ground for the jury's finding of negligence, namely, failure to inspect
the bands on the bale which fell. No such issue was ever submitted
to the jury. The only issues submitted to the jury with respect to
the bands related to the plaintiff's unseaworthiness claim.

ranty of workmanlike service" by using such a method in the first · instance. Similarly, if the location of the so-called New York bales in the hold made the hold an unsafe place to work, the petitioner necessarily breached its warranty to the respondents by unloading the cargo before first moving those bales. The petitioner is in the business of handling cargo, and any danger created by the New York bales was at least as apparent to the petitioner as to the respondents. Under its warranty the petitioner had a duty to see that the danger was removed before proceeding to unload the Philadelphia cargo.

It is questionable whether the right to a jury trial under the Seventh Amendment is involved in this case, since the respondents' rights against the petitioner depend upon a maritime contract, not upon the common law. *American Stevedores, Inc.,* v. *Porello,* 330 U. S. 446, 456. We need not pursue that inquiry, however, because in any event nothing in the Seventh Amendment removes the duty of a trial judge to give proper instructions to a jury, or the duty of a reviewing court to correct a trial judge's errors. Fed. Rules Civ. Proc., 50. Here, each possible ground of the respondents' negligence *vis-à-vis* the original plaintiff involved a breach of the petitioner's warranty as a matter of law. The Court of Appeals correctly held that the trial judge was in error in not so instructing the jury.

I would affirm.