Joseph BENNETT

v.

UNITED STATES LINES CO.

Civ. A. No. 27129.

United States District Court
E. D. Pennsylvania.

May 1, 1963.

Wilfred R. Lorry, Freedman, Landy & Lorry, Philadelphia, Pa., for plaintiff.

Robert Cox, Krusen, Evans & Byrne, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

Bennett, a longshore gang foreman, was injured while directing his gang in the movement of a 17-ton boiler into the wing of a hold in defendant's vessel. The movement was accomplished by dragging the boiler along the deck of the vessel by means of a bull line from the ship's winches rigged through snatch blocks located at strategic points on the vessel. One of the snatch blocks was secured by means of a wire strap wrapped around an H-beam stanchion. While the boiler was being so moved, the strain of the load caused the wire strap around the H-beam stanchion to part and the suddenly released bull line struck and injured Bennett. The vessel's chief mate, one of whose duties it was to see to the proper stowage of the boiler in the wing, was present in the hold and observed the operation while it was being performed.

Plaintiff sought recovery against defendant shipowner on the grounds of unseaworthiness (inadequacy of the equipment) and negligence (failure to furnish a safe place to work). The matter was submitted to the jury on special interrogatories. From the answers to interrogatories it appears that the jury found that:

(a) the vessel was not unseaworthy;

(b) the defendant was negligent in failing to furnish plaintiff a safe place to work;

(c) the plaintiff was contributorily negligent to the extent of 7 percent; and

(d) plaintiff sustained damages in the total amount of $57,000.

On the foregoing special findings, verdict was entered in plaintiff's favor in the net amount of $53,010.

Before me are defendant's motions for judgment n. o. v. and for new trial. Defendant's contentions are, first, that its "motion for directed verdict under Rule 50" should have been granted since, in the plaintiff's case, there was no evidence whatsoever of negligence on the part of defendant, and second, that the finding of only 7 percent contributory negligence is contrary to the evidence, is shocking and a new trial should be awarded.

■ Defendant's several motions for judgment must be dismissed. The statement contained in defendant's brief that "at the close of plaintiff's evidence, and the entire case, defendant moved for a dismissal of the complaint and a directed verdict in its favor" is inaccurate. An oral motion under Rule 50(a) was made at the conclusion of plaintiff's case. The motion was not renewed at the conclusion of all the evidence and it was therefore waived. Massaro v. United States Lines Company, 307 F.2d 299 (3rd Cir. 1962).

■ Further, defendant did not preserve the question it now seeks to raise since it failed to specify that ground, as required by Rule 50(a), in the motion which it did present at the conclusion of plaintiff's case. Its motion was based upon the cases cited in defendant's "Trial Memorandum". Those cases dealt only with the issue of unseaworthiness, not negligence. The several motions for judgment are, therefore, not properly before me and must be dismissed.

Were I not compelled to dismiss the motions on the foregoing technical ground, I would nevertheless deny them on the merits.

■ In plaintiff's case there was testimony that the chief mate was in the hold while the boiler was being dragged. He saw what was being done and how it was being done, including the method of rigging the snatch block. From cross-examination of several of plaintiff's witnesses it could be inferred that the rigging of the snatch block as set up under Bennett's supervision (wire strap wrapped around the bare H-beam steel stanchion) was unsafe, that dunnage was available and should have been used as a buffer between the wire strap and the corners of the H-beam steel stanchion, and that the failure of the mate to require such precautions constituted a neg-

ligent failure to provide a safe place to work. That testimony was enough to require denial of a motion under Rule 50(a) for a directed verdict. Whatever other proof was needed to provide the *weight* of the evidence to satisfy the jury as to defendant's negligence was furnished in the defendant's case by its efforts to prove that Bennett was negligent.

■ Defendant's alternative motion, for new trial, is based on the contention that the jury's finding of 7 percent contributory negligence was so contrary to the evidence that it shocked the conscience of the court. Defendant bases that on the comment made at side bar after the verdict had been recorded, that the court was "stumped by the 7 percent figure". That surprise was attributable more to the odd number than the size. Had the jury expressed its finding in any round number (some multiple of 5), however small, it would not have been surprising. Because of the odd number I thought the jury might mistakenly have written "7" when it intended "70", but when the verdict in the amount of $53,010 (representing diminution of the gross amount of the damages by the 7 percent contributory negligence) was announced to the jury, there was not the slightest sign of surprise or disagreement on the part of any member of the jury. Defendant had full opportunity to seek a poll of the jury but did not do so. I am satisfied that 7 percent is what the jury intended as plaintiff's degree of fault contributing to his injury.

Accepting as a fact (as I do) that the jury intended its finding of 7 percent, that finding does not shock me even though I might personally disagree with it. There is support in this record for a finding of no negligence on Bennett's part. The jury could have found, from the testimony of Bennett and his co-workers, that the rigging which Bennett used here was a type generally used by longshoremen; that in so far as reasonable and prudent longshoremen were concerned, the method used was safe and proper; that Bennett exercised due care in standing where he did when he gave the signals for the move; and that Bennett acted as a reasonable and prudent longshore gang foreman in all that he did.

If the jury could properly have found *no* negligence on Bennett's part, then in my opinion, a finding of any degree of negligence on his part, however small, is supportable. The fact that he created the condition does not render the finding of so small a degree of fault on his part inconsistent with the finding that defendant was negligent, cf. Street v. Isthmian Lines, Inc., 313 F.2d 35 (2nd Cir. 1963). The jury could have found, particularly from defendant's testimony, that whereas Bennett did not know and should not have known of the danger of the type rigging which he used, the chief mate did know or should have known; that the chief mate had the authority to stop operations to prevent the use of such dangerous rigging, and that he was negligent in failing to do so.

■ The negligence found against Bennett could very well have been based not on the type of rigging he employed but on his failure to stand in a safe place at the time he gave the signal to take the strain on the load, and that his standing where he did contributed only slightly to the happening of the accident. Such a view of the jury's answers to interrogatories would render them completely consistent and plaintiff is entitled to that view. Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd., et al., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

The issues in this case were submitted to the jury under instructions to which no exceptions were taken by defendant. The issues were resolved by the jury with special findings. Those findings do not shock my conscience. Absent a shocked conscience, I have no desire to invade the jury's fact finding province, much less the power to do so. Gallick v. Baltimore & Ohio R. Co., 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963).

Defendant's motions will be denied.