453 F.2d 1094
 Robert SIDEREWICZ, Plaintiff-Appellant,
v.
ENSO-GUTZEIT O/Y, Finn Lines, Ltd., O/Y, and Boise-Griffin
Steamship Co., Inc., Defendants and Third-Party
Plaintiffs-Appellees,
v.
CONNECTICUT TERMINAL CO., Inc., Third-Party Defendant-Appellee.
 No. 230, Docket 71-1705.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 9, 1971.
Decided Jan. 4, 1972.
 
 Jacob Rassner, New York City (Alan C. Rassner, New York City, of counsel), for plaintiff-appellant.
 Francis X. Byrn, New York City (Haight, Gardner, Poor & Havens, New York City, and Robert K. Marzik, Stratford, Conn., of counsel), for defendants and third party plaintiffs-appellees.
 John J. Cotter, Cotter, Cotter & Sohon, Bridgeport, Conn., for third party defendant-appellee.
 Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Judge.*
 DAVIS, Judge:
 
 
 1
 As the case comes to this court, it involves a longshoreman's claim against the shipowner for injury through the alleged unseaworthiness of a vessel which he was helping to unload.[1] Plaintiff Robert Siderewicz, a stevedore employed by Connecticut Terminal Co., Inc., was part of a gang discharging a cargo of wood pulp at the State Pier, New London, Connecticut in December 1965, from M/S Finneagle, a Finnish vessel owned by defendants Enso-Gutzeit O/Y and Finn Lines, Ltd. Stationed on the pier, he was hurt when one of the hooks, after being freed of bales in the unloading process, snagged on part of the pier as the empty sling to which it was attached was being returned to the vessel. His contention is that the hook caught on the pier because of the improper method of unloading. The owners resisted this claim and impleaded plaintiff's employer, Connecticut Terminal, for indemnity if Siderewicz should prevail. At the close of all the evidence in a jury trial, the District Court granted a motion to dismiss the complaint on the ground that the elements of a viable claim had not been established and there was unsufficient evidence to go to the jury.[2]
 
 
 2
 The first issue is whether a prima facie case was made that the technique of unloading was improper. If so, a jury question of unseaworthiness has been presented; the Supreme Court reiterated in Usner v. Luckenbach Overseas Corp., 400 U.S. 494, 499, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971), that a ship's unseaworthy condition could arise from an improper method of loading her cargo, and an improper method of unloading falls into the same class. Gutierrez v. Waterman S.S. Co., 373 U.S. 206, 211-215, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1963); Atlantic & Gulf Stevedores Inc. v. Ellerman Lines, Ltd., 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).[3] The general procedure here was to discharge from the ship (by use of a winch and slings) eight bales at a time, each with two hooks, but there was testimony that the particular draft unloaded to the pier just before the accident contained an extra ninth bale tied by rope (without hooks) to the other eight. Plaintiff argues that the addition of the ninth bale made the process unsafe, and thus unseaworthy, because to discharge such an overloaded sling required it to be brought closer to the floor of the pier with the likely result that the hooks would drag on or near the floor after unloading, and more easily tend to get snagged on the planks or on the caplog at the edge of the dock.
 
 
 3
 Plaintiff's proof on this point is not uncontroverted, but there was clearly enough to go to the jury. One witness testified that "two hooks have always been the rule," that it is customary to hook each bale, and that it is not usual for the hooks to drag when there are only eight bales. Another testified that eight bales is the "standard procedure," that "[w]hen the draft is landing with the nine [bales], you have problems with the hooks" "[b]ecause the hook that contains the lifting apparatus has to be dropped lower to take the rope sling off * * *," and that when hooks drag along the dock that is a competent producing cause for the hooks catching. Plaintiff's own evidence was that the custom and usage was to use eight bales with two hooks to the bale; that it is a dangerous practice to use nine bales; and that if you do use nine bales "[y]ou have to lower the cargo hooks down around two more feet * * *" or "from 2 to 3 feet more than you normally do."[4] This testimony, if believed, was enough to ground a verdict that the addition of the ninth bale made the whole procedure unsafe.[5]
 
 
 4
 The next, and critical, question is whether, assuming that the method of unloading was improper, there was an adequate showing that this technique proximately caused the accident. As we understand his view, Judge Lumbard, sitting in the District Court, thought that the answer had to be negative because the evidence showed that (a) plaintiff had gathered all the hooks up off the dock into his arms-so that they were no longer dragging on or near the pier-before the occurrence of the snagging which led to the injury, and (b) the snagging came about because of the negligence of another stevedore (the signalman or the winchman), or possibly of appellant himself. As to the latter proposition, Usner v. Luckenbach Overseas Corp., supra, holds that an isolated, personal, unforeseeable act of negligence by a fellow longshoreman does not make the shipowner liable on the ground of unsea-worthiness, if the condition of the ship, her appurtenances, her cargo and her crew were all satisfactory. See Tarabocchia v. Zim Israel Navigation Co., 446 F.2d 1375 (2d Cir.1971).
 
 
 5
 There was, indeed testimony supporting that cast of the facts, but there were also statements (in part by the same witnesses) which could mean that the hooks had not yet been gathered up off the pier but were still dragging on, or almost touching, the floor, even though held together by plaintiff.[6] On this evidence the jury could decide that the improper condition of unloading proximately caused the accident because the hooks were at all pertinent times closer to the dock floor than they would have been under the correct technique, and thus more likely to be caught on the planks or on the caplog at the edge of the dock. The appellant's evidence on this score was certainly not overwhelming but we think it enough, if accepted, to sustain a favorable verdict.
 
 
 6
 On both of these issues, unsea-worthiness and proximate causation, the jury could reasonably find either way, and a direction for defendants could not properly be made. See Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 228-229, 79 S.Ct. 664, 3 L.Ed.2d 756 (1959); Brady v. Southern Ry. Co., 320 U.S. 476, 479-480, 64 S.Ct. 232, 88 L.Ed. 239 (1943); Berke v. Lehigh Marine Disposal Corp., 435 F.2d 1073, 1075 (2d Cir.1970); Armstrong v. Commerce Tankers Corp., 423 F.2d 957, 959 (2d Cir.1970); Julian J. Studley Inc. v. Gulf Oil Corp., 407 F.2d 521 (2d Cir.1969). Accordingly, the case must be retried.[7]
 
 
 7
 Reversed.
 
 
 
 *
 Of the United States Court of Claims, sitting by designation
 
 
 [1]
 Plaintiff's additional claim of negligence was dismissed by consent after the close of all the evidence. Also by consent, Boise-Griffin Steamship Co., Inc., the shipowner's agent in the United States, was dismissed as a defendant
 
 
 [2]
 Previously, another judge had denied plaintiff's motion for summary judgment, saying "genuine issues as to material facts are present, including the defendants' claim that plaintiff's negligence was the sole or a contributory cause of the accident."
 
 
 [3]
 The recent decision in Victory Carriers, Inc. v. Law, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, does not affect the present case. That was a "pier-side accident[s] caused by a stevedore's pier-based equipment" (92 S.Ct. 421); here, the harm was caused by unloading gear operating from the ship, a type of injury which the opinion in Victory Carriers distinguished (see 92 S.Ct. 423-427)
 
 
 [4]
 In addition, plaintiff relied on a portion of the Safety and Health Regulations for Longshoring (29 CFR Sec. 1504.81(e), formerly 29 CFR Sec. 9.81) providing: "Bales of cotton, wool, cork, wood pulp, gunny bags or other similar articles shall not be hoisted into or out of the vessel by their straps unless the straps are of sufficient strength to support the weight of the bale, and two hooks, each in a separate strap, are used." Since there was enough live testimony to take to the jury the issue of improper unloading technique, we do not now decide the bearing of this regulation or whether it would, if relevant, be enough by itself to show unseaworthiness
 
 
 [5]
 If putting nine bales in the draft made the vessel unseaworthy, the shipowner would not be saved from liability because it may have been negligent of the stevedoring company to use that technique. Grillea v. United States, 232 F.2d 919, 922-923 (2d Cir. 1956); Thompson v. Calmar S.S. Corp., 331 F.2d 657, 659 (3rd Cir. 1964); see Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 427-428, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959)
 
 
 [6]
 We refer to the evidence of Bartnicki at App. 16-18 and 41 and plaintiff at App. 77-78 which can be understood as saying that in that specific instance the hooks were still dragging or close to the pier. The apparently conflicting testimony on which appellees rely can possibly be read as referring to a general practice of a longshoreman's gathering the hooks up in his arms before they are returned to the vessel, rather than to the actual and precise events at the time of this accident
 
 
 [7]
 Plaintiff also contends that the dock area was unsafe, and by the same token the vessel unseaworthy, because the dock failed to have a plywood cover or some other device to prevent the snagging of hooks. Appellees answer that this question was not properly raised in the trial court, and in any event the shipowner does not warrant the seaworthiness of the pier (see fn. 3, supra). Since we order a new trial on other grounds, we leave this matter open, without passing upon either of defendants' points