KLRA, INC. *v.* Jim LONG, Jerry ATCHLEY, Paul ROTHFUSS and Kerby CONFER

CA 81-431                                    639 S.W.2d 60

Court of Appeals of Arkansas
Opinion delivered September 15, 1982
[Rehearing denied October 13, 1982.*]

*MAYFIELD, C.J., and COOPER, J., would grant rehearing.

*Wright, Lindsey & Jennings,* for appellant.

*Rose Law Firm, P.A.,* by: *Vincent Foster, Jr.* and *Hillary Rodham,* for appellees.

TOM GLAZE, Judge. This case involves a sale and purchase agreement wherein appellees agreed to buy appellant's KLRA-AM radio station for $3,000,000. Appellees refused to close the sale, citing a number of reasons for nonperformance. Appellant filed suit against appellees for breach of contract, alleging damages of $1,000,000. The primary issue on appeal is the legal effect of the jury's answers to seven interrogatories. The trial court favored appellees with a judgment, finding the jury's answers established appellees were not liable to appellant under the parties' agreement. Appellant contends on appeal that the court's finding was erroneous because the jury's answers,

when considered together, dictated a judgment for $125,000 in appellant's favor. Alternatively, appellant argues that if the answers are not construed in its favor, no judgment should be entered on the interrogatories, and instead, a new trial should be ordered. We affirm the trial court's decision.

We first discuss the facts and evidence that underpinned the interrogatories which were submitted to the jury. The parties signed the buy and sell agreement on February 24, 1979. A closing date was not set until later. Because of the anticipated delay in closing, the agreement contained a number of covenants and warranties to protect the parties between the date of the signing and closing. For instance, appellees agreed to an escrow deposit of $125,000, evidencing their ability to perform. The sale was also conditioned on the Federal Communication Commission's (FCC) approval of the transfer; had it not acted prior to January 1, 1980, either party could have terminted the agreement. Appellant further covenanted it would continue to conduct the station's business in as diligent a manner as it had done prior to signing the agreement. It also warranted that since January 1, 1979, no material adverse changes had occurred in the business, operations, properties, assets or liabilities of the radio station and that no such changes would occur prior to the closing date.

Subsequent to entering into the parties' agreement on February 24, appellant's station encountered numerous problems. First, business profits decreased $100,000 in 1979 from those reported in 1978. Secondly, Equal Employment Opportunity Commission (EEOC) violations filed against KLRA prior to the parties' agreement caused the FCC to impose certain reporting conditions before it would approve the transfer of the station's license to appellees. In addition, the FCC granted the parties' license application subject to the possible future divestiture of one of appellees' radio stations — they owned KSSN-FM radio station at the time of this application. Although appellees voiced disappointment to appellant over the two conditions imposed by the FCC, they advised the FCC that they would comply with the EEOC reporting requirements, and they did not seek a waiver of the divestiture requirement. The FCC issued its

preliminary conditional consent to the assignment of the license on October 1, 1979.

On October 16, 1979, appellees' attorney wrote appellant's counsel a five-page letter listing different reasons why he believed the appellant was in substantial breach of the parties' February 24 agreement. Among those reasons, he included the following:

(1) A material decrease in profits for 1979.

(2) The reduction of the sales staff and monies spent on promotion and sales activities.

(3) The station's withdrawal from the Standard Rate & Data-Spot Radio Rates & Data (SRDS), a major reference source for new business.

(4) The conditional approval by the FCC for the station's license renewal and consent to assignment.

On October 24, 1979, appellees sent a letter to appellant requesting it to consider a reduction in the agreed purchase price (from $3 million to $2.6 million) in view of the station's loss of profits and the FCC's conditional approval of the license transfer. Although other contacts occurred between the parties, appellant ultimately set December 6. 1979, as the date to close the sale. Appellees refused to close, and appellant brought this action.

This case was submitted to the jury on interrogatories. Two questions, Nos. 3 and 4, were based on specific representations and warranties contained in the parties' agreement. The jury answered each interrogatory as follows:

## INTERROGATORY NO. 1

Do you find from a preponderance of the evidence that the divestiture condition placed upon the Federal Communications Commission's consent to the transfer of the license was material?

ANSWER: Yes.

## INTERROGATORY NO. 1A

Do you find from the preponderance of the evidence that the divestiture condition placed on the Federal Communications Commission's consent to transfer was waived by the Defendants?

Answer this Interrogatory only if you have answered "Yes" to Interrogatory No. 1.

ANSWER: Yes.

## INTERROGATORY NO. 2

Do you find from a preponderance of the evidence that the Equal Employment Opportunity reporting condition placed upon the Federal Communications Commission's consent to transfer of the license was material?

ANSWER: Yes.

## INTERROGATORY NO. 2A

Do you find from the preponderance of the evidence that the Equal Employment Opportunity reporting condition placed on the Federal Communications Commission's consent to transfer was waived by the Defendants?

Answer this Interrogatory only if you have answered "Yes" to Interrogatory No. 2.

ANSWER: Yes.

## INTERROGATORY NO. 3

Do you find from a preponderance of the evidence that from February 24, 1979, until the date for closing the sale, the business of KLRA, Inc. was conducted

diligently and only in the ordinary course, as the Court has defined those terms for you?

ANSWER: Yes.

## INTERROGATORY NO. 4

Do you find from a preponderance of the evidence that from January 1, 1979, to the date set for closing the sale, there were any material adverse changes in the business, operations, properties or assets of KLRA?

ANSWER: Yes.

## INTERROGATORY NO. 5

State the amount of damages, which you find from a preponderance of the evidence were sustained by KLRA, Inc., as a result of the occurrence.

ANSWER: $125,000.00

The jury's answers were accepted by the court, and the jury was discharged. Before judgment was entered, appellant filed a motion for judgment notwithstanding the verdict, contending that the answers required a judgment in favor of appellant but that the damages were inadequate and should be $325,000. Appellees, on the other hand, contended that the jury's answer to Interrogatory No. 4 required the judgment to be entered in favor of the appellees. Appellant filed this appeal after the court entered judgment for appellees.

When it was decided in appellees' favor, the court opined that Interrogatories Nos. 1 through 4 included the four grounds or defenses upon which appellees relied for not performing the parties' agreement. From the jury's answers, the court determined that the jury concluded that even though the appellees had waived the FCC conditions and the appellant had conducted the station's business in a diligent manner, the appellees still were not liable on the contract because material changes had occurred in the

business under Interrogatory No. 4. The court dismissed any consideration of the jury's answer to Interrogatory No. 5 since it involved damages. The effect of the court's ruling was that the jury's answers to Interrogatories Nos. 1 through 4 were consistent, but inconsistent with No. 5 because it dealt with damages sustained by appellant.

Appellant's argument is that the answers to all of the interrogatories were consistent, including No. 5. In brief, appellant contends the jury's answer to Interrogatory No. 4 relates back to the answers it gave in Nos. 1 and 2. In other words, the jury determined that the FCC conditions to which they referred in Nos. 1 and 2 were the material adverse changes it found had occurred in No. 4. Thus, appellant surmises that the material adverse changes that occurred were waived by appellees, and judgment for damages should be awarded appellant.

In considering the court's duty when special interrogatories are involved, both parties cite the same legal authorities. For instance, they cite *Gallick* v. *Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 119 (1963), which states the applicable law as follows:

> But it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: *'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.'* *Atlantic & Gulf Stevedores, Inc.* v. *Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807. We therefore must attempt to reconcile the jury's findings, by exegesis if necessary, as in *Arnold* v. *Panhandle & S.F.R. Co.*, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889; *McVey* v. *Phillips Petroleum Co.*, 288 F.2d 53 (C.A. 5th Cir.); *Morris* v. *Pennsylvania R. Co.*, 187 F.2d 837 (C.A. 2d Cir.) (collecting authorities), before we are free to disregard the jury's special verdict and remand the case for a new trial. (Emphasis supplied).

Here, both parties argue that the answers to Interrogatories Nos. 1 through 4 are consistent. Their disagreement

concerns whether these consistent answers are in conflict with No. 5, *i.e.*, the verdict on damages. The trial court held that they were. In so holding, the court exercised the discretion given it pursuant to Ark. Stat. Ann. § 27-1741.3 (Repl. 1979), which in relevant part provides:

> When the answers are consistent with each other but one or more is inconsistent with the general verdict, *the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict* or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial. (Emphasis supplied). [*See also, Missouri Pacific R.R. Co.* v. *Merrill*, 265 Ark. 292, 578 S.W.2d 35 (1979)].[1]

Both parties agree that the jury held that the EEOC reporting and divestiture conditions in Interrogatories Nos. 1 and 2 were material but waived by the appellees. They also concede the jury found in Interrogatory No. 3 that appellant diligently conducted the operation of the radio station. Thus, answers to Nos. 1 through 3 in no way relieve appellees from performing the parties' contract. However, it is the parties' disagreement regarding Interrogatory No. 4 that presents the real issue before us.

In considering the answer to No. 4, appellees urge that the jury held there were material adverse changes in the business, operations, properties or assets of KLRA, not only because of the EEOC and divestiture conditions, but also because of a 48% drop in profits in 1979. Appellant argues

---

[1]*See* Cox and Newbern, *New Civil Procedure: The Court that Came In from the Code,* 33 Ark. L. Rev. 1 (1979). Prior to *Merrill,* the authors of this excellent article speculated that the Arkansas Supreme Court, by its adoption of Rule 49 of the Arkansas Rules of Civil Procedure, had eliminated the usage of general verdict forms accompanied with inter- rogatories. Such practice was provided for in Federal Rule 49 (b) but was omitted in Arkansas' Rule 49.

that profit losses were not in any way the basis upon which Interrogatory No. 4 was submitted to the jury. Based on this interpretation, appellant contends that the material adverse changes to which No. 4 refers must be limited to the EEOC and divestiture conditions in Nos. 1 and 2. Although appellant's contention is skillfully and adroitly argued, it simply is not supported by the evidence.

The record is replete with evidence showing that the parties considered profits a material factor in the sale of the radio station. In fact, the agreed purchase price was, in part, based upon a multiple of the business' profits. Obviously, a decrease in profits would affect adversely any price to which the parties agreed on February 24, 1979. Even appellant recognized that a drop-off of $100,000, or 48%, in profits in one year was a serious change detrimental to the station. To be expected, the appellees and their witnesses strongly contended that such a loss in profits was a material adverse change which bore directly on the value of the station. Suffice it to say, extensive testimony and other evidence before the jury underscored the importance which profits figured in the appellees' purchase of appellant's business. It would be ignoring the obvious to accept appellant's naked contention that profits were not considered when the interrogatories were framed and submitted to the jury. Such a conclusion would render almost meaningless the extensive evidence which repeatedly showed that appellees believed the station's loss in profits was tantamount to a breach in the parties' agreement. If one reads the testimony abstracted by both parties and then considers the interrogatories submitted to the jury, it is impossible to discount or ignore the importance that profits played in this transaction. Interrogatory No. 4 is the only question that permitted the jury to deal with the loss-in-profits issue. The evidence supports the court's decision that the jury found that the appellees waived the material adverse conditions imposed by the FCC, determined that appellant diligently conducted the station's business, and held that the business operations of the station were materially and adversely affected because of a substantial decline in profits.

We believe it significant that the trial judge heard the

same testimony and evidence as the jury. His opinion was that the interrogatories were in keeping with the presentation of appellees' case, although he expressed concern that Interrogatory No. 5 on damages was premature and might prove confusing until the issue of liability was decided. Appellees' entire defense to appellant's action was to present evidence that the parties' agreement was breached because of (1) a loss in profits, (2) a failure to operate the station diligently, (3) a possibility of divestiture, and (4) EEOC conditions imposed by the FCC. The jury held adversely to appellees concerning three of their contentions but recognized their loss-in-profits defense when it held that material adverse changes occurred in the business, operations, properties or assets of the station. The trial judge reviewed the interrogatories and answers in light of the evidence, and we believe correctly determined that the jury held in the appellees' favor.

Appellant challenged the court's award of attorney fees and costs solely on the ground that appellant should have been the prevailing party. Of course, we disagree. Since no other issue is raised relative to the attorney fee award, we affirm the trial court's decision, including that part which reflects appellees' entitlement to attorney fees, costs and expenses.

Affirmed.

MAYFIELD, C.J., and COOPER, J., dissent.

MELVIN MAYFIELD, Chief Judge, dissenting. I would remand this case for a new trial because the answers to Interrogatories 4 and 5 are inconsistent.

As I understand it, the appellees do not actually contend that the answers to those two interrogatories are not inconsistent but argue that Interrogatory No. 5 is not really an interrogatory. Apparently, it is appellees' position and also the position of the majority opinion, that this interrogatory and its answer constituted a general verdict and that it was proper for the trial court to enter judgment in

accordance with the answers to the interrogatories notwithstanding the general verdict.

I simply cannot agree that Interrogatory No. 5 and its answer constituted a general verdict. The only authority cited in appellees' brief as support for this remarkable position is the case of *Gallimore* v. *Missouri Pac. R.R. Co.*, 635 F.2d 1165 (5th Cir. 1981), which appellees say is analogous to the situation in the case before us.

That case involved an interrogatory which read:

> What amount of money if paid now in cash do you find will compensate the Plaintiff Kelly Gallimore for his injuries suffered on December 22, 1976?

The jury's answer to the question was $60,000.00. The jury also answered interrogatories finding that plaintiff was negligent but that the defendant was not. The jury also answered another interrogatory saying that the plaintiff's own negligence had contributed only 80% to his *injuries*. Since the defendant was not negligent and there was evidence the plaintiff suffered from a congenital back problem that could have contributed to his injuries, the trial court disregarded the answer to the damage interrogatory and entered judgment for the defendant who was not negligent.

That situation is a common and familiar occurrence in the trial of personal injury cases in Arkansas. Where the interrogatories on liability are answered in favor of the defendant there is no judgment entered for the plaintiff even though the jury answers an interrogatory finding the amount of damages sustained by the plaintiff. But that is not the situation in the case at bar.

In this case, Instruction No. 11 told the jury that in the agreement between the parties the appellant made certain representations and warranties which were *conditions precedent* to the appellees' performance of the contract. The instruction then said:

KLRA represented and warranted to the defendants:

    (a) that since January 1, 1979, there had been no material adverse changes in the business, operations, properties, assets or liability of KLRA, and

    (b) there would be no material adverse changes in the business, operations, properties, or assets to the date of closing of the sale.

By its answer to Interrogatory No. 4 the jury found that there *had* been material adverse changes in the business, operations, properties or assets since January 1, 1979. Now it is important to note that the result of this finding is that the appellees were not required to perform their agreement to buy the radio station because the representations and warranties which were violated were *conditions precedent* to the performance of the contract.

Instruction No. 14 told the jury:

> If an Interrogatory requires you to assess the damages of KLRA, then you must fix the amount of money which will reasonably and fairly compensate it in accordance with the following instruction. A party claiming damages for a breach of contract for the sale of property is entitled to the difference, if any, between the contract price and the fair market value of that property. . . .

By its answer to Interrogatory No. 5 the jury said the damages sustained by KLRA as a result of the occurrence was $125,000.00. Now it is important to note that by *this* answer the jury found that the contract to buy the station had been *breached.* Otherwise, under the court's instructions and the language of the interrogatory, the jury could not find that damages were sustained by KLRA. Thus, the situation here is not at all analogous to that in the *Gallimore* case relied upon by the appellees. There, the plaintiff had sustained damages regardless of who was at fault. Here, the radio station could not have sustained damages unless there had been a breach of the contract.

Every experienced trial lawyer knows that a general verdict is one in which the jury finds *generally* for one or more parties to the lawsuit as opposed to making findings of fact on *specific issues.* It is clear to me that Interrogatory No. 5 and its answer was a finding of fact on an *issue* and did not constitute a general verdict. The reporter's note to our Civil Procedure Rule 49 says the rule is substantially the same as Federal Rule of Civil Procedure 49. The note also says that although the rule does not specifically consider the possibility of inconsistent answers to interrogatories submitted to the jury, federal cases have held the trial court can ask the jury to reconsider in an attempt to remove the inconsistency or it can order a new trial. The note cites the case of *Wright* v. *Kroeger Corp.,* 422 F.2d 176 (5th Cir. 1970) where the appellate court remanded for a new trial because the answers to the interrogatories were conflicting and inconsistent.

The appellant moved for a new trial in the instant case and since the court did not ask the jury to reconsider its verdict and the inconsistency was not resolved, I think the appellant's motion should have been granted and I would remand for a new trial.

COOPER, J., joins in this dissent.