**NATHANIEL SHIPPING, INC.,**
Plaintiff–Appellee,
Cross–Appellant,

v.

**GENERAL ELECTRIC COMPANY, INC.,**
Defendant–Cross–Defendant Third Party Plaintiff–Appellant, Cross–Appellee.

v.

**LOUISIANA GULF SHIPYARDS, INC.,**
Defendant–Cross–Plaintiff–Appellee,
Cross–Appellant.

Nos. 88–3277, 88–3817.

United States Court of Appeals,
Fifth Circuit.

May 20, 1991.

Craig R. Nelson, Hulse, Nelson & Wanek, New Orleans, Barry A. Guryan, Robert C. Cale, Fordham & Starrett, Boston, Mass., Benjamin R. Slater, Jr., Monroe & Lemann, New Orleans, La., for General Elec. Co., Inc.

Harvey A. Gleason, Thomas D. Forbes, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Nathaniel Shipping.

## PETITION FOR REHEARING

(Opinion January 15, 1991, 5th Cir., 920 F.2d 1256)

Before BROWN, REAVLEY and HIGGINBOTHAM, Circuit Judges.

### PER CURIAM:

Except that the majority (Judges Reavley and Higginbotham) would grant rehearing by substituting the following restatement of their views in Part III of the opinion (p. 1263–65, rehearing is denied:

III. *Judges Reavley and Higginbotham Determine East River Cuts Off G.E.'s Liability to Nathaniel Shipping.*

■ At the outset, we question whether Nathaniel has any rights against G.E. under the warranty of workmanlike performance, as its origins are in contract rather than tort. The warranty arose as a response to the doctrine of seaworthiness, best stated in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1945). In *Ryan Co. v. Pan–Atlantic Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the Supreme Court held that a vessel's owner was entitled to indemnity from a stevedoring contractor for its liability for personal injuries resulting from the contractor's negligence. The owner was himself liable for the injuries because of his non-delegable duties under the doctrine of seaworthiness. The Court reasoned that the stevedoring contract "necessarily include[d]" a requirement that the contractor

perform its obligations "properly and safely." *Ryan*, 350 U.S. at 133, 76 S.Ct. at 237. The warranty was thus *contractual*. "The obligation is not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship. It is the essence of the petitioner's stevedoring contract." *Id.* The Court has twice found a vessel's owner entitled to indemnity absent a contract between the owner and a stevedoring contractor, but only because it concluded that the owner was essentially a third-party beneficiary of an agreement between the contractor and a third party. *See Waterman Co. v. Dugan & McNamara*, 364 U.S. 421, 424, 81 S.Ct. 200, 202, 5 L.Ed.2d 169 (1960); and *Crumady v. The JH Fisser*, 358 U.S. 423, 428, 79 S.Ct. 445, 448, 3 L.Ed.2d 413 (1959).[1]

■ In *Todd Shipyards Corp. v. Turbine Serv.*, 674 F.2d 401, 417 (5th Cir.1982), this court extended the warranty of workmanlike performance to require a sub-subcontractor to indemnify a general contractor against its liability for economic damages, but the extension was dubious at best. The opinion cited *Whisenant v. Brewser–Bartle Offshore Company*, 446 F.2d 394, 401 (5th Cir.1971), for the proposition that implied warranties of workmanlike performance may extend to parties not in privity, or a third-part beneficiary relationship, but *Whisenant* had already been called into doubt in *Hercules, Inc. v. Stevens Shipping Co., Inc.*, 629 F.2d 418, 422 (5th Cir.1980), reheard en banc and reversed on other grounds, 698 F.2d 726 (5th Cir.1983).[2] Several recent decisions have also questioned the application of the warranty beyond its groundings in personal injuries resulting from unseaworthiness. *See Bosnor S.A. De C.V. v. Tug L.A. Barrios*, 796 F.2d 776, 784–86 (5th Cir.1986);

1. Subsequent cases have consistently described the warranty as contractual. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 261–62, 99 S.Ct. 2753, 2756–57, 61 L.Ed.2d 521 (1979); *Italia Soc. v. Ore. Stevedoring Co.*, 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); *Atlantic and Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 366, 82 S.Ct. 780, 787, 7 L.Ed.2d 798 (1952); *Employers Insurance Co. of Wausau v. Suwannee River*, 866 F.2d 752, 763 n. 17 (5th Cir.1989); and *Verdin v. C & B*

*Boat Co.*, 860 F.2d 150, 155 (5th Cir.1988). Nathaniel itself even describes the warranty as contractual in arguing that its damages should include attorneys fees.

2. We do not believe that Nathaniel qualifies as a third-party beneficiary of the contract between LGS and G.E. *See* Restatement (Second) of Contracts § 302 and illustration 19.

*Hercules,* 698 F.2d at 737–38; and *Gator Marine Serv., Etc. v. J. McDermott & Co.,* 651 F.2d 1096, 1100 (5th Cir.1981).

Fortunately, we need not pursue the issues raised by the *Todd Shipyards* opinion here, for any extra-contractual liability for Nathaniel's economic losses is foreclosed by the Supreme Court's opinion in *East River S.S. Corp. v. Transamerica Delaval,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In *East River,* noting its fear of "contract law drown[ing] in a sea of tort," the Supreme Court held that a manufacturer in a commercial relationship has "no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." *Id.* at 871, 106 S.Ct. at 2302. Thus, a party who suffers only economic losses, as opposed to personal injury or property damage, must recover in contract. We extended *East River* to a contract for professional services in *Employers Ins. of Wausau v. Suwannee River Spa L.,* 866 F.2d 752, 763 (5th Cir.1989). *See also PPG Industries v. Sundstrand Corp.,* 681 F.Supp. 287 (W.D.Penn.1988); *AFM Corp. v. Southern Bell Tel. and Tel. Co.,* 515 So.2d 180 (Fla.1987); and *Gulf Boat Marine Services v. George Engine Co.,* 659 F.Supp. 6 (E.D.La.1986).[3]

In Part II, Judge Brown suggests that *East River* and *Wausau* are distinguishable because Nathaniel and G.E. were not in privity. But there was also no privity between the parties in *East River.* The plaintiffs had entered a charter contract with a trust created by the vessel's owners, and it was the owners who entered the contract with the defendants. *East River,* 476 U.S. at 859–60, 106 S.Ct. at 2296. In evaluating the plaintiffs' claims, the Court looked to the contract between the plaintiffs and the trust and concluded that the plaintiffs took the vessels "as is." *Id.* at 875, 106 S.Ct. at 2304.

Judge Brown further concludes that there was no possibility of bargaining over the allocation of the risk of defective performance by G.E. either between Nathaniel and LGS or between Nathaniel and G.E. We believe, however, that Nathaniel and LGS could and did bargain over this risk in their contract. *Todd Shipyards,* and the cases cited therein, stand only for the proposition that a contractor is not liable in *tort* for the negligence of its carefully chosen sub-contractor. *See Todd Shipyards,* 674 F.2d at 410 (discussing the *negligence* of Todd Shipyards). By contrast, LGS clearly would be liable in contract if G.E.'s negligence caused LGS to breach its own contract with Nathaniel. Thus, as in *East River,* Nathaniel's rights, if any, arose from its contract with LGS. LGS, in turn, could seek indemnity from G.E., subject to the limitations of the contract between LGS and G.E.

In sum, the Court (per Judges Reavley and Higginbotham) holds that *East River* precludes Nathaniel's claim against G.E. The judgment of the District Court on this issue is therefore reversed.

For reasons set forth in his dissent (Part II, 1259–63), Judge Brown would grant rehearing.

Before CLARK, Chief Judge, and POLITZ, KING, JOHNSON, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHE, WIENER, BARKSDALE, Circuit Judges.

## SUGGESTION FOR REHEARING EN BANC

(Opinion January 15, 1991, 5th Cir., 920 F.2d 1256)

PER CURIAM:

The Petition for Rehearing having been DENIED by separate order and the Court having been polled at the request of one of the members of the Court, and a majority of the Circuit Judges who are in regular active service not having voted in favor of

---

**3.** We decline to adopt the distinction urged by Nathaniel, between services pursuant to the manufacture of a new vessel and services related to the repair of an existing vessel. Such a distinction would be inconsistent with our reasoning in *Wausau.* The public policy concerns underpinning tort duties are not present here, and the parties are capable of defining satisfactory performance and allocating the risk of defective performance in their contract. *See Wausau,* 866 F.2d at 763–65.

it, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestion for Rehearing En Banc is also DENIED.

JOHN R. BROWN, Circuit Judge, with whom Judge Politz joins, dissenting from failure to grant rehearing en banc.

My reasons why en banc review should have been granted are essentially set forth in the panel opinion, see the introductory paragraph (p. 1257) which is expanded at length in my "dissent" in Part II of the panel opinion (p. 1259–63).

Essentially, my main argument is that *East River* does not substitute *contract* for maritime *tort* principles where there is *no* contract as between the shipowner (Nathaniel) and the negligent[1] repair sub-contractor (General Electric).

The only contract covering the work (drilling holes in the thrust block) was between Nathaniel, shipowner, and LGS (Louisiana Gulf Shipyards), the repair yard, who in turn employed GE to drill the holes.

Since the whole theory of *East River* is that the respective duties, rights and liabilities must be found in the *contract*, not in *tort law*, I urge the simple proposition: how is this theory met when there is *no* contract, nor can one be implied, spelling out responsibilities and liabilities for economic damages as between the party injured (Nathaniel) and the party bringing about such damage (GE)?

This is all capsulated in the total lack of privity of contract as between Nathaniel and GE. *See, Employers Ins. of Wausau v. Suwannee River Spa Lines,* 866 F.2d 752, 766, n. 27 (5th Cir.1989).

The practical consequence of the Court's holding is that a shipowner, desiring to assure it would have the full recovery as permitted under maritime tort principles for economic loss growing out of improper performance by a sub-contractor (with whom there is no privity of contract), the shipowner would have to contract with that sub-contractor and each and all of the sub-contractor's employees working on the job.

Any such requirement would have two consequences. First, it would force a contract on parties otherwise free of such an obligation or substantively unwilling to enter into that legally formal relationship. Second, in today's industrial complex,[2] it involves the wholly unworkable scheme of seeking solicited side agreements with each and all and everyone of the employees who might be engaged in working on the sub-contract, their sub-contractors, sub-sub contractors, sub-sub-sub contractors *ad infinitum.*

---

1. To overcome any possible implication that using this typically tort expression necessarily begs the question, I point out that it is used loosely in the sense that the work was not done properly because of significant errors in performance.

2. See, wholly for purposes of illustration and not for its legal significance, *Todd Shipyard Corp. v. Turbine Service,* 674 F.2d 401 (5th Cir. 1982) which illustrates the many different artisans involved in a shipyard completing a major classification overhaul of a large ocean-going vessel.