779 F.2d 1429
 Prod.Liab.Rep.(CCH)P 10,831
David TONER, Guardian ad litem for Kevin TONER, an infant
child, and David Toner and Susan Toner, husband
and wife, individually, Plaintiffs-Appellees,
v.
LEDERLE LABORATORIES, a DIVISION OF AMERICAN CYANAMID CO., a
corporation, Defendant-Appellant.
 No. 84-3906.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1985.
Decided Jan. 7, 1986.
 
 Kenneth L. Pederson, Twin Falls, Idaho, for plaintiffs-appellees.
 Robert J. Koontz, Elam, Burke, Evans, Boyd, & Koontz, Boise, Idaho, for defendant-appellant.
 Appeal from the United States District Court for the District of idaho.
 Before WRIGHT, KENNEDY, and ANDERSON, Circuit Judges.
 KENNEDY, Circuit Judge:
 
 
 1
 This products liability action involves Tri-Immunol, appellant Lederle Laboratories' triple antigen vaccine used to immunize children against diphtheria, pertussis, and tetanus (DPT). Lederle, the only American distributor of the vaccine, contends that the evidence presented to the jury was insufficient to support a finding that it was negligent in the design, manufacture, and distribution of the vaccine. Resolution of this appeal requires us to address unsettled questions of Idaho law, and we deem it appropriate to permit the judicial system of that state to address those matters. We therefore defer decision of this case and certify four questions raising state law issues to the Idaho Supreme Court. See Idaho App.R. 12.1 (Supp.1985).
 
 
 2
 In 1979, Kevin Toner, then a three-month-old infant, was vaccinated with Tri-Immunol and suffered a rare condition of the spine known as transverse myelitis, the cause of which is unknown. As a result of the affliction, Kevin is permanently paralyzed from the waist down. His parents commenced litigation in Idaho state court, and appellant removed the case to federal court on the basis of diversity of citizenship. 28 U.S.C. Sec. 1441 (1982). The suit was tried to the jury on theories of strict liability, negligence, breach of warranty of merchantability, and failure to warn. Appellees withdrew the failure to warn claim before the case was submitted to the jury. The jury found that the pertussis component of the vaccine had caused Kevin's paralysis; although in a special verdict the jury rejected the strict liability and breach of warranty claims, it found appellant negligent and assessed damages of $1,131,200.
 
 
 3
 In the early years of this century, pertussis was one of the leading causes of death in children. In recent years, however, the widespread availability of vaccines such as that marketed by defendant has virtually eradicated the disease. An instructive, brief description of common vaccines is found in an opinion by the Second Circuit, Ezagui v. Dow Chemical Corp., 598 F.2d 727, 731 (2d Cir.1979), and we rely upon that description for the following background explanation.
 
 
 4
 By introducing an antigenic factor into the body, vaccines stimulate the production of antibodies that protect against disease. Some infectious organisms, such as those causing diphtheria and tetanus, excrete soluble toxins insolable by medical research. The toxin is inactivated with formaldehyde and transformed into a toxoid. The toxoid is then used in a vaccine, as it can immunize against disease by stimulating the production of antibodies in the recipient, even though it has lost its own poisonous qualities.
 
 
 5
 This is not the case, however, with vaccines such as Tri-Immunol. Tri-Immunol is a so-called whole cell vaccine because it contains whole killed pertussis organisms. The whole organism is used because the pertussis organism contains fifteen or sixteen different antigens, and medical science has yet to isolate the one that stimulates protection against the disease. See Tinnerholm v. Parke, Davis & Co., 411 F.2d 48, 50 (2d Cir.1969). Courts that have addressed the issue of liability for adverse reactions to the DPT vaccine have commented that "the bacterial organism which causes pertussis is so complex as to make impossible the isolation and deactivation of the toxin or poison." Ezagui, 598 F.2d at 731; accord Tinnerholm, 411 F.2d at 50. Because of this difficulty, at the time of Kevin Toner's vaccination, the whole cell pertussis vaccine was the only pertussis vaccine licensed by the Food and Drug Administration (FDA) for use in the United States. It remains the only licensed vaccine today.
 
 
 6
 The whole cell pertussis vaccine is neurotoxic and can cause adverse reactions. These reactions are of two types: local and severe. Local reactions include swelling, fever, irritability, and crying spells. Severe reactions include encephalopathy, paralysis, and even death. The expected rate of severe reactions ranges between one in 100,000 and one in 310,000 doses. Prior to this incident, there had been only one case of transverse myelitis reported in connection with a DPT vaccine.
 
 
 7
 During the 1950's, the Eli Lilly Company developed a fractionated cell pertussis vaccine called Tri-Solgen that was prepared by treating whole killed pertussis cells with salt. Early studies indicated that this method of preparation resulted in a less toxic vaccine, and following its approval by the FDA in 1967, Tri-Solgen occupied a substantial share of the market. Lilly withdrew from the vaccine business in 1975 and stopped producing Tri-Solgen. Lilly sold the right to produce Tri-Solgen to Wyeth Laboratories; however, the FDA has refused to relicense the vaccine.
 
 
 8
 Lederle was aware of the neurotoxicity of Tri-Immunol as early as the 1950's and since that time has received occasional reports of severe adverse reactions to the vaccine. Following FDA approval of Tri-Solgen, Lederle conducted an internal study comparing Tri-Immunol with Tri-Solgen in an effort to determine whether to develop its own fractionated cell product. The study found fewer local reactions associated with Tri-Solgen, but it noted no severe reactions in either cohort due to the restricted number of subjects studied. At trial, Dr. Frank Cano, the Manager of Biologics at Lederle, testified that the differences observed in the study lacked statistical significance. Lederle only experimented with the production of a fractionated cell product until 1975. Since then, Japan has developed a pertussis toxoid vaccine, and Lederle's research efforts to achieve that objective may reach fruition within the next few years.
 
 
 9
 The principal thrust of appellees' negligence argument at trial concerned Lederle's failure to develop a fractionated cell product. In support of this theory, appellees contend that Tri-Solgen was shown to be a safer yet equally efficacious pertussis vaccine. Appellees' experts testified that the whole cell vaccine was five times more reactive than the fractionated cell product, and that early studies indicated that Tri-Solgen caused fewer local reactions than the whole cell vaccine. The studies did not establish, however, that Tri-Solgen caused fewer severe reactions than the whole cell vaccine. With regard to efficacy, appellees produced four studies that found that fractionated cell products produced an immune response to pertussis. However, in 1972, a review panel within the Bureau of Biologics of the FDA refused to certify Tri-Solgen as "safe and effective" although it did so certify the whole cell vaccines. Because the FDA has refused to relicense Tri-Solgen or any other fractionated cell product, the manufacture and sale of such a vaccine by Lederle, or any other pharmaceutical company, would constitute a criminal offense under the Food, Drug and Cosmetic Act. See 21 U.S.C. Secs. 331(d), 333(a), 355(a) (1982).
 
 
 10
 Appellant contends that a basis for negligence was not established in this case. Although the question of the sufficiency of the evidence is a procedural matter governed by federal law, Glovatorium, Inc. v. NCR Corp., 684 F.2d 658, 660 (9th Cir.1982), we must look to the substantive law of the State of Idaho to determine the elements of plaintiffs' cause of action. Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 345 (9th Cir.1978).
 
 The trial judge instructed the jury that:
 
 11
 A manufacturer of vaccines has the duty to exercise ordinary and reasonable care not to expose the potential consumer to an unreasonable risk of harm from the use of its products. The failure to meet this standard of due care in light of all the attendant circumstances will constitute negligence and subject the manufacturer to liability for the resulting consequences. The fact that the consumer's injuries were proximately caused by the manufacturer's product does not in and of itself constitute a sufficient basis upon which to predicate the manufacturer's liability. When the cause of action sounds in negligence, a manufacturer's duty to additionally test and investigate the propensities of its product is dependent upon the foreseeable risk of harm to potential users in light of then current scientific or medical knowledge and discoveries.
 
 
 12
 Appellant argues that the instruction is insufficient because it does not recognize that certain drugs have unavoidable risks but must, nevertheless, be used to protect the public health. To support its argument, appellant cites Restatement (Second) of Torts Sec. 402A comment k (1965),[1] which recognizes that the marketing of some drugs is fully justified to prevent disease despite risks inherent in their use. As appellant recognizes, the Restatement section and its comment pertain to strict liability; but, appellant argues, the controlling principles are also applicable to the question of liability for negligence.
 
 
 13
 Though appellees contend that the issue in this case is not the applicability of comment k but, rather, the appellant's alleged negligence in failing to develop a fractionated cell vaccine, we see the questions as related. The concept of an unavoidably unsafe product seems necessarily to depend on whether research was properly pursued. If this is true, the trial court may have omitted a material element of negligence in failing to instruct the jury to decide whether Tri-Immunol was an unavoidably unsafe product.
 
 
 14
 Various reported decisions of the Idaho Supreme Court succinctly set forth the elements of negligence, see, e.g., Alegria v. Payonk, 101 Idaho 617, 619 P.2d 135, 137 (1980); Brizendine v. Nampa Meridian Irrigation District, 97 Idaho 580, 548 P.2d 80, 83 (1976), but our research does not disclose an Idaho case that provides definitive guidance on the question of the duty, or standard of care, applicable to the manufacturer of drugs that are unsafe in some respects but that are necessary for the control of disease. The Idaho courts have not yet had the opportunity to address Restatement (Second) of Torts Sec. 402A comment k, either in the strict liability or the negligence context. Other relevant Idaho precedents do not indicate whether Lederle's conduct in designing and distributing a vaccine for which there is no legally available substitute and which possesses a degree of social utility may be characterized as negligent.
 
 
 15
 We use our discretion to certify four questions to the Idaho Supreme Court. Lehman Brothers v. Schein, 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974). Certification provides a means to obtain authoritative answers to unclear questions of state law. 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 4248, at 520 (1978). It "save[s] time, energy, and resources and helps build a cooperative judicial federalism." Lehman Brothers, 416 U.S. at 391, 94 S.Ct. at 1744 (footnote omitted); see also Bellotti v. Baird, 428 U.S. 132, 150-51, 96 S.Ct. 2857, 2867-68, 49 L.Ed.2d 844 (1976) (quoting Lehman Brothers ); Clay v. Sun Insurance Office, Ltd., 363 U.S. 207, 212, 80 S.Ct. 1222, 1225, 4 L.Ed.2d 1170 (1960) (certification available to permit resolution of unresolved questions of state law). We have certified questions to the Idaho Supreme Court before. See, e.g., Waters v. Armstrong World Industries, 773 F.2d 248, 250-51 (9th Cir.1985); In re New Concept Realty & Development, Inc., 753 F.2d 804, 806 (9th Cir.1985) (per curiam); Meckert v. Transamerica Insurance Co., 742 F.2d 505, 506-07 (9th Cir.1984). Pursuant to Idaho procedure, we find that the following questions constitute "controlling question[s] of law ... as to which there is no controlling precedent in the decisions of the Idaho Supreme Court" and that "[a]n immediate determination of the Idaho law with regard to [these questions] would materially advance the orderly resolution of the litigation." Idaho App.R. 12.1(a)(1), (2) (Supp.1985).
 
 
 16
 (1) Under Idaho law, do the principles set forth in Restatement (Second) of Torts Sec. 402A comment k apply to strict liability and negligence claims, and in particular to the claims in this suit?
 
 
 17
 (2) If yes, is there evidence from which a jury could find Tri-Immunol avoidably unsafe?
 
 
 18
 (3) Under Idaho law, could the jury, on this record, find the defendant negligent for failure to develop a fractionated cell vaccine, or for any other reason?
 
 
 19
 (4) Were the jury instructions on the issue of negligence in full accordance with Idaho law, given the contentions of the parties in this case?
 
 
 20
 We respectfully request the Idaho Supreme Court to exercise its discretionary authority under Idaho Appellate Rule 12.1(c) to accept and decide these questions. Our phrasing of the questions should not restrict the court's consideration of the problems and issues involved. The court may reformulate the relevant state law questions as it perceives them to be, in light of the contentions of the parties. Meckert, 742 F.2d at 507. To the extent the court finds it necessary in resolving the issue of negligence to address liability under theories of strict liability or implied warranty of merchantability, it may do so as well. If the Idaho Supreme Court deems the issues presented by this case to be inappropriate for certification, or if it chooses to decline the certification for any other reason, it should so state, and we will resolve the issues according to our perceptions of Idaho law.
 
 
 21
 Appellant also argues for reversal on the ground that the jury's finding of negligence was inconsistent with its rejection of appellees' allegations of strict liability and breach of implied warranty of merchantability. The jury returned the following five verdicts, each by unanimous vote:
 
 
 22
 QUESTION NO. 1: Have the plaintiffs proved by a preponderance of the evidence, that Kevin Toner's paralysis was proximately caused by the DPT vaccine manufactured and sold by the defendant Lederle Laboratories? Yes.
 
 
 23
 QUESTION NO. 2: Was defendant Lederle Laboratories negligent in connection with the product Tri-Immunol which was the proximate cause of the plaintiff's injuries? Yes.
 
 
 24
 QUESTION NO. 3: Was the product Tri-Immunol manufactured by the defendant Lederle Laboratories in a defective condition unreasonably dangerous to persons which was the proximate cause of the plaintiff's injuries? No.
 
 
 25
 QUESTION NO. 4: Did defendant Lederle Laboratories breach an implied warranty of merchantability in connection with the product Tri-Immunol which was the proximate cause of the plaintiff's injury? No.
 
 
 26
 QUESTION NO. 5: What is the total amount of damages sustained by the plaintiffs as a result of the injuries to Kevin Toner? $1,131,200.
 
 
 27
 Although the inconsistency claim is ultimately a matter of federal law for this court to decide, we should not decide its merits in advance of the state court's decision on the question of negligence. The jury's responses to the interrogatories are the result of its interpretation of the district court's instructions to it on the elements of negligence, strict liability, and warranty of merchantability. The question whether the trial court instructed the jury in accordance with Idaho law necessarily precedes resolution of the inconsistency claim. If, after the Idaho Supreme Court declares the substantive principles of law that govern the case, it is determined that the district court instructed the jury incorrectly, it may be unnecessary for us to reach the inconsistent verdict claim.
 
 
 28
 The Clerk will file a certified copy of our Opinion and Order with the Idaho Supreme Court under Idaho Appellate Rule 12.1(b). This panel retains jurisdiction over further proceedings in this court. The parties will notify the Clerk within one week after the Idaho Supreme Court accepts or rejects certification, and again within one week after that court renders its opinion.
 
 
 29
 So ordered.
 
 
 
 [1]
 Comment k states:
 Unavoidably unsafe products. There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.
 Restatement (Second) of Torts Sec. 402A comment k (1965).