26 F.3d 131
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Faye R. MIYAMOTO, Plaintiff-Appellee,
v.
OTIS ELEVATOR CO., a New Jersey corporation, and Doe 1-10,
Defendant-Appellant.
 No. 93-15386.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1994.
Decided June 9, 1994.
 
 Before: FARRIS, BEEZER and RYMER, Circuit Judges
 MEMORANDUM*
 Defendant Otis Elevator appeals from the judgment of the district court in favor of plaintiff Faye R. Miyamoto. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291.
 I. Collateral Estoppel
 Otis argues that Miyamoto is estopped from contending that she was injured in the December 1987 fall because the Office of Worker's Compensation Programs denied her worker's compensation claim for that injury. We reject the argument.
 Whether collateral estoppel is available is reviewed de novo. Bates v. Union Oil Co. of California, 944 F.2d 647, 649 (9th Cir.1991), cert. denied, 112 S.Ct. 1761 (1992). A district court's decision to apply collateral estoppel is reviewed for abuse of discretion. Id. at 651.
 In a diversity action, the forum state's law of collateral estoppel applies. Northwest Acceptance Corp. v. Lynnwood Equip., Inc., 841 F.2d 918, 926 (9th Cir.1988). Under Hawaii law, "[c]ollateral estoppel ... precludes relitigation of facts or issues previously determined when it is raised defensively by one not a party in a prior suit against one who was a party in that suit and who himself raised and litigated the fact or issue." Santos v. State, Dept. of Transp., 646 P.2d 962, 965 (Haw.1982) (quoting Ellis v. Crockett, 451 P.2d 814 (Haw.1969)). Application of collateral estoppel is tempered "by the prerequisite that a plaintiff have a full and fair opportunity to litigate the relevant issues." Pele Defense Fund v. Paty, 837 P.2d 1247, 1261 (Haw.1992), cert. denied, 113 S.Ct. 1277.
 Although Miyamoto filed a claim with the OWCP, she failed to produce any evidence to back it up. She did not contest the findings of the OWCP, and the record contains no evidence that any sort of hearing was ever held. This situation is analogous to entry of a default judgment. Default judgments are not given collateral estoppel effect. See In re Gottheiner, 703 F.2d 1136, 1140 (9th Cir.1983); 1A Moore's Federal Practice p 0.444 (1993). Since there was no actual litigation surrounding whether Miyamoto was injured, the district court did not err in refusing to give collateral estoppel effect to the OWCP decision.
 II. Plaintiff's Expert Witness
 Otis argues that Christopher Iha, an elevator mechanic at U.S. Elevator Co., should not have been allowed to testify as an expert because he lacked knowledge of industry standards. The district court's decision to admit expert testimony is reviewed for abuse of discretion, and the court's action will be sustained unless it is manifestly erroneous. Taylor v. Burlington Northern R. Co., 787 F.2d 1309, 1315 (9th Cir.1986).
 The district court qualified Iha as an expert in the area of what a "reasonably prudent elevator mechanic" would do under similar circumstances. Iha testified that he drew upon the standards of mechanics who came from other companies and that he considered his "standards and procedures to be that of what a reasonable and prudent elevator mechanic would adhere to." Iha's "specialized knowledge" of various troubleshooting procedures and their effect (see Section III, infra ) was likely to assist the jury in determining whether Otis had breached its duty of care. See Fed.R.Evid. 702.
 That Iha could not provide specific testimony regarding the "industry standard" for responding to misleveling complaints does not disqualify him as an expert. Although relevant, evidence of industry practices is not necessarily determinative of due care. See Brown v. Clark Equip. Co., 618 P.2d 267 (Haw.1980); The T.J. Hooper (In re Eastern Transp. Co.), 60 F.2d 737, 740 (2d Cir.1932) (L. Hand, J.); Prosser & Keeton on Torts Sec. 33 (5th ed. 1984).
 
 
 1
 The district court did not err in admitting Iha's testimony.
 
 
 2
 III. Otis' Motion for Judgment as a Matter of Law
 
 
 3
 Otis argues that the district court erred in denying its motion for a judgment as a matter of law. A denial of a motion for judgment as a matter of law is reviewed de novo. In re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). The reviewing court's role is the same as the district court's. McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). "[A] directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." Id.
 
 
 4
 Iha testified that Richard Mills, the Otis employee responsible for servicing the elevator, should have taken more steps in response to the misleveling complaints. According to Iha, if he were investigating a misleveling problem, he would (1) shut the elevator down, (2) attempt to find people in the building who had noticed the problem, and (3) ride the elevator. If the leveling problem was intermittent (and thus not noticeable on the test rides) he described a number of further "troubleshooting" procedures that he would go through including checking the leveling device and the voltage. Iha testified that it would be possible to detect a problem in an SSD-1 box through a voltage check.
 
 
 5
 The jury apparently placed more weight on Iha's testimony than on the contrary testimony of Robert Matthews, Otis' expert. From Iha's testimony, the jury could have reasonably believed that Iha was a "reasonably prudent" elevator repairman, and that a reasonable repairman would have followed Iha's procedures. Had Iha's procedures been followed, the problem with the SSD-1 box might have been detected and fixed sooner. The jury could have also concluded that Otis should have warned elevator users of the potential danger. There was also sufficient evidence from which the jury could infer that Otis' lack of care caused Miyamoto's accident. The district court did not err in denying the motions for judgment as a matter of law.
 
 IV. Evidentiary Decisions
 
 6
 Otis argues that the district court erred in (1) preventing Matthews from describing the contents of certain documents, (2) admitting the "Navy Log" and (3) admitting an extraneous page found in the Navy Log. Evidentiary rulings are reviewed for an abuse of discretion and do not require reversal unless they result in prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988). An erroneous evidentiary ruling is prejudicial unless "it is more probable than not that the result in the district court was untainted by the error." Ackley v. Western Conference of Teamsters, 958 F.2d 1463, 1470 (9th Cir.1992).
 
 A. Matthews' Testimony
 
 7
 Otis argues that its expert should have been allowed to describe the contents of certain documents prepared by U.S. Elevator relating to the past history of the elevator at issue. We have held that a district court has broad discretion in deciding whether to admit an expert opinion and whether to admit evidence forming the basis of that opinion. See Standard Oil Co. v. Moore, 251 F.2d 188, 222 (9th Cir.1957), cert. denied, 356 U.S. 975 (1958) ("If the [expert] opinion is received, the court may, in its discretion, allow the expert to reveal to the jury the information gained during such investigations and studies."); see also Nachtsheim v. Beech Aircraft Corp., 847 F.2d 1261, 1271 (7th Cir.1988) (quoting Standard Oil Co. v. Moore ); Michael M. Graham, Federal Practice & Procedure Sec. 6651 & n. 29. None of the cases Otis relies on hold to the contrary.
 
 
 8
 The district court ruled that it would limit Matthews' testimony regarding the documents' contents if his testimony "[got] into the details for which I ... find that it may be confusing, or otherwise unnecessary for the jury to hear about." Matthews was allowed to testify that his conclusion that the SSD-1 box had caused the misleveling was
 
 
 9
 [b]ased on the number of times U.S. Elevator had to replace the SSD-1 unit, in the time that they were maintaining it, along with the other problems that they had experienced. I counted some 11 times that it was either replaced or had to be adjusted or readjusted.
 
 
 10
 Matthews' conclusion that the SSD-1 box was the cause of the misleveling was not a controversial one. In closing argument, for example, Miyamoto's counsel pointed out to the jury that after the SSD-1 box was replaced, there were no further misleveling problems. Thus, there was apparent agreement on the cause of the accident. The district court did not abuse its discretion by preventing Matthews from presenting additional testimony regarding the contents of the U.S. Elevator records.
 
 B. The Navy Log
 
 11
 The Navy Log was admitted at trial pursuant to Rule 803(6), the business records exception.[1] Otis argues that the Navy Log should not have been admitted because it (1) lacked foundation and contained multiple hearsay, (2) was not relevant, and (3) was evidence of subsequent remedial measures.
 
 1. Foundation and Hearsay
 
 12
 The business records exception applies "only if the [person] furnishing the information to be recorded was acting routinely, under a duty of accuracy, with employer reliance on the result, or in short in the regular course of business." Clark v. City of Los Angeles, 650 F.2d 1033, 1037 (9th Cir.1981), cert. denied, 456 U.S. 927 (1982) (quotations omitted).
 
 
 13
 The log was properly introduced pursuant to the business records exception for the purpose of showing (1) that Caroline Morioka received a call from "Millie," (2) that Morioka relayed the problem to Otis, and (3) that Morioka occasionally jotted down responses she received from Otis. However, the jury could have regarded the log as evidence that numerous misleveling incidents had, in fact, occurred. The initial elevator complaints were made by the elevator users themselves. The elevator users were not under a business duty to report the elevator problems. The district court therefore erred in admitting the log without a limiting instruction.
 
 
 14
 However, the admission of the Navy log does not require reversal because it was not prejudicial. The record contains ample evidence besides the log from which the jury could infer that misleveling occurred. For example, the most damaging statement regarding the elevator misleveling came from Miyamoto herself--a witness with first-hand knowledge. Further, Otis' responses to interrogatories admitted that Otis had received complaints on December 16, January 5, January 11, January 20 and February 4 regarding elevator misleveling. Those dates (and the fact that complaints had been made on those dates) were entered into the record without objection. Since no limiting instructions were requested or given, the jury could have inferred from Otis' interrogatory responses that misleveling had, in fact, occurred on the specified dates. Thus, it is not more probable than not that the admission of the Navy log tainted the result.
 
 2. Relevance and Prejudice
 
 15
 Otis also contends that the log contained information about elevators unrelated to the elevator in question and was therefore not relevant as to time and subject matter. The argument lacks merit. The log entries regarding the elevator Miyamoto was riding were relevant. All log-related questions posed by counsel at trial centered around entries concerning the elevator at issue. Otis has not shown why the jury would consider problems associated with other elevators as relevant to the issue before them.
 
 3. Subsequent Remedial Measures
 
 16
 Otis did not object at trial to the introduction of the log on the basis that it was evidence of subsequent remedial measures. It has therefore waived the issue. See Fed.R.Evid. 103(a)(1). Reversal is warranted only if the introduction of the log constituted plain error. See Fed.R.Evid. 103(d). There was no plain error. There is abundant testimony in the record (even from Otis' own witnesses) concerning the subsequent remedial measures taken by Otis in response to misleveling complaints. Whether the subsequent remedial measures were properly performed was the very issue before the jury.
 
 C. The Extraneous Page
 
 17
 The hearsay problem with the admission of the "extraneous page" is identical to that of the log itself--the persons first reporting the problem were not under a business duty to do so. However, the error was not prejudicial. Common sense dictates that people can fall when an elevator mislevels. The main issue before the jury was not whether misleveling caused people to fall, but whether Otis was negligent in not detecting the problem sooner and/or not warning elevator passengers about the danger.
 
 V. Jury Instructions
 
 18
 Otis argues it was prejudiced by a number of jury instructions. Jury instructions are reviewed to determine "whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). The trial judge has substantial latitude in tailoring the instructions, and challenges to the formulation adopted by the court are reviewed for abuse of discretion. Id.
 
 A. Instruction 28
 Instruction 28 provided:
 
 19
 You are instructed that Ms. Miyamoto had the right to rely on the automatic leveling mechanism of the elevator and to assume that the elevator was operating normally and safely at the time of the accident(s), and to rely and act on that assumption, unless you find that Ms. Miyamoto knew that the elevator was not operating normally and safely at the time of the accident.
 
 
 20
 Otis' contention that this instruction was erroneous because it was taken from a New York case, Smith v. Jay Apartments, Inc., 304 N.Y.S.2d 737 (App.Div.1969), which relied on the doctrine of res ipsa loquitur is without merit. The instruction does not shift the burden of proof to Otis. It merely informs the jury that Miyamoto was not contributorily negligent unless she knew the elevator was not operating safely.
 
 B. Negligence Instructions
 
 21
 Otis cites no precedent for its argument that the district court allowed too many jury instructions defining negligence and that their effect was prejudicial. The argument lacks merit.
 
 C. Apportionment Instruction
 
 22
 Finally, Otis contends that the last two sentences of the apportionment of damages instruction are contradictory. We reject the argument.
 
 
 23
 The last paragraph of Instruction 32 provides:
 
 
 24
 If plaintiff continued to have symptoms from a prior injury at the time of the accidents at issue, then you must try to determine how much of Plaintiff's damages can be attributed to the accidents at issue, making a rough apportionment of such. However, if you are unable to make even a rough apportionment of damages resulting from these accidents alone, then you must apportion the damages equally among all accidents in which Plaintiff has incurred such injuries. Apportionment should only be made for symptoms existing at the time of the accidents in question and not for symptoms which are wholly attributable to the accidents in question.
 
 
 25
 The first two sentences require a jury to apportion damages where a particular symptom is a result of both the elevator accidents at issue and a prior accident. The last sentence instructs the jury that if a particular symptom is wholly attributable to the elevator accidents, it need not apportion damages for that symptom. The instruction is not contradictory.
 
 VI. Inconsistencies in Jury Verdict
 
 26
 Otis argues that inconsistencies in the jury's verdict warranted judgment as a matter of law in its favor or, in the alternative, a new trial. A district court's denial of a motion for judgment as a matter of law (or judgment notwithstanding a verdict) is reviewed de novo. Erickson v. Pierce County, 960 F.2d 801, 804 (9th Cir.), cert. denied, 113 S.Ct. 815 (1992). A district court's decision concerning a motion for a new trial is reviewed for abuse of discretion. United States v. 99.66 Acres of Land, 970 F.2d 651, 658 (9th Cir.1992).
 
 
 27
 "When faced with a claim that verdicts are inconsistent, the court must search for a reasonable way to read the verdicts as expressing a coherent view of the case, and must exhaust this effort before it is free to disregard the jury's verdict and remand the case for a new trial." Toner v. Lederle Laboratories, 828 F.2d 510, 512 (9th Cir.1987), cert. denied, 485 U.S. 942 (1988). The district court reconciled the damage awards as follows:
 
 
 28
 The jury's award of zero damages for the December fall reflected an uncertainty as to how much damage Miyamoto suffered in the December fall.... Because Miyamoto was able to bear the pain of the first fall without treatment, the jury might have withheld any compensation for that fall. However, after the second fall, the jury awarded compensation because it had both a measure of economic damage (her lost work days and her medical bills) and corroboration of the severity of her pain and suffering.
 
 
 29
 The district court correctly interpreted the verdicts as expressing a coherent view of the case.
 
 
 30
 Otis' argument that the damage award was inconsistent with the court's instruction regarding apportionment of damages is also without merit. That instruction requires the jury to apportion damages if it finds that the damages were partially attributable to accidents that occurred prior to both of the elevator accidents at issue.
 
 
 31
 The district court did not err in denying Otis' motions for judgment as a matter of law and for a new trial.
 
 VII. Pre-Judgment Interest
 
 32
 Otis argues that the district court's pre-judgment interest award improperly includes interest on damages for future pain and suffering. Hawaii law authorizes a trial judge to award prejudgment interest. See Haw.Rev.Stat. 636-16. The statute vests the trial judge with broad discretion to award interest in conformity with the circumstances of each case. In re Asbestos Cases, 847 F.2d 523 (9th Cir.1988). When a jury awards general damages without distinguishing between present and future damages, the district court can award pre-judgment interest on the entire damage award. See Wiegand v. Colbert, 718 P.2d 1080, 1084 n. 1 (Haw.1986).
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Rule 803(6) provides that the following evidence is not barred by the rule against hearsay:
 [A business record] made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the [record], all as shown by the testimony of the custodian ..., unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.